THE LAW OFFICES OF
# FAUSTO E. ZAPATA, JR., P.C.

Broadway Chambers Building
277 Broadway, Suite 206
New York, New York 10007

Tel: 212-766-9870 / Fax: 212-766-9869
Email: fz@fzapatalaw.com
Web: www.LaborEmploymentLawFirm.com

February 11, 2022

Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: Milton Montenegro v. Laumont Photographics, Inc., et al, 20 Civ. 4443 (CBA) (SMG)

Dear Judge Pollak,

  We represent the Plaintiff in the above referenced matter.

  This letter is submitted jointly with attorneys for Defendants Laumont Photographics, Inc., Willi Vera, and Jaime Pelaez (hereinafter collectively referred to as "Defendants") to obtain approval of a negotiated settlement in a lawsuit involving claims under the Fair Labor Standards Act. Enclosed, please find the proposed Settlement Agreement in connection with the above referenced matter, which is a fair and reasonable settlement for the reasons discussed below. See, Exhibit "A" for a copy of the proposed agreement.

  This action was commenced under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"). The Plaintiff alleges that the Defendants violated the wage and hour laws and that the Defendants owes the Plaintiff unpaid wages, liquidated damages, and penalties.

  The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]).

  Courts have interpreted this limitation to mean that parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) (Second Circuit held that F.R.C.P. 41(a)(1)(A)(ii) "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."); *Yunda v. SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088 (S.D.N.Y. 2017) (bifurcated settlements, wherein FLSA claims are submitted to the court for approval, but parallel NYLL claims are not, is permissible because NYLL parallel claims do not require court approval); *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.,* No. 07 Civ. 153,

2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007); *compare with Gaughan v. Rubenstein*, 2017 U.S. Dist. LEXIS 107042, 2017 WL 2964818 (S.D.N.Y. 2017) (pre-litigation FLSA settlements do not require approval of the district court or the DOL if the plaintiff was represented by counsel).

Courts considering motions to approve FLSA settlements, i.e., Cheeks motion, must be satisfied that the proposed settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). For a court to find a settlement is fair and reasonable, "the parties must provide enough information for the court to examine the bona fides of the dispute. The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages." *Id*. (internal quotations omitted).

To determine whether a settlement is fair and reasonable under the FLSA, courts consider the totality of circumstances, including but not limited to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020), quoting, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

**I. Plaintiff's range of possible recovery**

Plaintiff Milton Montenegro (hereinafter "Plaintiff") alleges that he was employed as Carpenter and Delivery Worker for Defendants from on or around November 2013 to March 2020.

With respect to Plaintiffs' FLSA and NYLL overtime claims, throughout his employment with Defendants, Plaintiff alleges that he would often work in excess of forty (40) hours in a workweek without receiving premium overtime pay equal to one and one-half times the regular rate of pay for all hours worked in excess of (40) in a workweek.

During the discovery stages of this case, Defendants turned over Plaintiff's time and payroll records, which they allege are contrary to Plaintiff's allegations and defeat a majority of Plaintiff's claims.  These records allowed Plaintiff to calculate how much he was owed, in terms of unpaid overtime wages during the relevant statutory period. Based on these records, Plaintiff calculated that he was owed $10,401.86, not including liquidated damages.  Hence, at most, Plaintiff could recover $20,803.72 under the FLSA and NYLL when one includes liquidated damages.  In terms of costs, Plaintiff spent $921 to prosecute the instant matter.  Defendants deny the allegations in the Complaint and deny that Plaintiff is entitled to the above-claimed sums.

## II. The extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses

Counsel for the parties are experienced in litigating and resolving wage-and-hour matters. The parties engaged in extensive negotiations beginning in or around December 2021, and after much discussion regarding the strengths and weaknesses and risks of going forward, the parties made a reasoned decision to settle this lawsuit due to the uncertainties of litigation and the likelihood that the legal fees associated with the Defendants' legal expenses in defending themselves through a dispositive motion or trial would exceed the settlement amount.

## III. The seriousness of the litigation risks faced by the parties

Parties to litigation face risk and expenses that are inherent in litigation, including appeals, and post-judgment collection proceedings. Here, the Plaintiff also faces the risk of no recovery, a lower recovery or a delayed recovery because Defendants have produced Plaintiff's time and payroll records which they claim show that Plaintiff did not work the number of hours that he claimed to have worked and earned the wages that he claimed to have earned, which, Defendants contend, would result in less damages than what Plaintiff claimed even if he succeeded on liability. On the other hand, the Defendants acknowledge that they may have exposure associated with the Plaintiff's claims and have assessed the likelihood of successfully defending this matter against the benefits of resolving this matter at this stage of the litigation process.

## IV. Whether the settlement agreement is the product of arm's-length bargaining between experienced counsel

The settlement agreement here is the product of arm's-length negotiation between experienced counsel, each of whom vigorously represented their respective clients' interests. Moreover, the parties participated in mediation on December 1, 2021, with Joseph DiBenedetto, Esq., who assisted the parties' in identifying their positions' respective strengths and weaknesses, risk inherent in litigation, duration of time involved in litigation, *etc*. With the Mr. DiBenedetto's assistance and after discussing the strengths and weaknesses and risks of going forward at mediation, the parties made the reasoned decision to settle this lawsuit due to the uncertainties of litigation and the likelihood that the legal fees associated with Defendants' defense through a dispositive motion or trial would exceed the settlement amount.

## V. The possibility of fraud or collusion

Counsel who are experienced in litigation matters, including wage and hour litigation under the FLSA, represented the parties. Counsel for both sides utilized their experience and thoroughly analyzed the claims and defenses, determined the range of potential damages for Plaintiff, and engaged in arms-length negotiations to achieve a fair resolution for the parties. The parties themselves heavily were involved in the settlement negotiations and had the opportunity to carefully review the terms of the settlement agreement before execution.

Thus, there was no possibility of fraud and collusion throughout the process.

The parties represent to the Court that the settlement agreement is fair to the Plaintiff, reasonably resolves bona fide disagreements between the Plaintiff and Defendants about the merits of the Plaintiff's claims; and demonstrates a good faith intention by the parties that their claims for liability and damages be fully and finally resolved and not re-litigated in the future.

On this basis, the settlement reached was fair and reasonable.

The parties agreed to settle Plaintiff's overtime claims, including statutory attorneys' fees, for $20,000.00. The settlement is to be broken down as follows:

a. $6,359.67 in back wages less applicable tax withholdings, under the FLSA and NYLL;
b. $6,359.67in liquidated damages pursuant to the FLSA and NYLL overtime claims;
c. $6,359.66 as attorneys' fees and $921 in costs payable to "The Law Offices of Fausto E. Zapata, Jr., P.C."

## VI. Attorneys' Fees

Under the Fair Labor Standards Act and New York's Labor Law, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees.

In the FLSA context, attorneys' fees arise in three contexts: (1) applications following a ruling in favor of the plaintiff; (2) following a settlement where the agreement reserves the question of fees and costs for the court to decide; (3) settlement incorporating attorneys' fees and costs into the settlement amount. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 601 (2d Cir. 2020).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020), *citing, Cheeks*, 796 F.3d at 206.   "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' "" *Fisher,* 948 F.3d at 606.  On that note, the Second Circuit has held "[n]either the text nor the purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorneys' fees. With respect to the statutory text, FLSA simply provides for a 'reasonable attorney's fee to be paid by the defendant'… Nothing in this clause or the surrounding text provides for the conclusion that a 'reasonable attorneys fee must be a 'proportional' fee." *Fisher*, 948 F.3d at 603 (finding that limiting attorneys fees to 33% of total settlement contravenes the FLSA, a uniquely protective statute, because attorneys would be discouraged from litigating low value cases and these plaintiffs would be left with little legal recourse.)

To assess reasonableness of fees and cost applications, courts require that fee applications be supported by adequate documentation. *Fisher*, 948 F.3d at 600, *citing, N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983).  This includes contemporaneous time records for attorney time that details the nature of the work performed. Id.

4

With regards to statutory attorneys' fees, courts in this District routinely award hourly attorney fee rates ranging from approximately $175 to $500—depending on experience—for attorneys working on FLSA litigation. *See Calicia v. T&H Village Food Corp d/b/a Village Diner, et al.*, 12 Civ. 3150 (E.D.N.Y. 2012) (in this case, Plaintiff's counsel was awarded approximately $500 an hour in an FLSA case; *Kahlil v. Original Old Homestead Rest.*, 657 F. Supp. 2d 470, 476 (S.D.N.Y. 2009) (awarding hourly rate of $400 for a "senior lawyer with 25 years of experience); *Ferrara v. CMR Contracting, LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants"); *Toussie v. County of Suffolk*, 2011 U.S. Dist. LEXIS 58179, 2011 WL 2173870, at *2 (E.D.N.Y. May 31, 2011) (awarding $400 to an attorney with 7 years of experience); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507-08 (S.D.N.Y. 2012) (awarding fees to Plaintiffs' counsel's firm at rates of $175/hour for associate work and $350/hour for partner work); *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010).

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher, 948 F.3d at 606.

Here, my offices' standard hourly billing rate for my time is $500.00 an hour and I worked 51 hours and incurred $921 in out-of-pocket expenses in prosecuting Plaintiff's FLSA claims. I have reviewed our office's billing records and confirmed that time/resources devoted to this matter were reasonably and necessarily performed to litigate this matter effectively. I have acted as the lead counsel responsible for the prosecution of this action and also maintained contemporaneous time records reflecting the time spent on this matter.  See, Exhibit "B" for a copy of the aforementioned.

I am the founder of The Law Offices of Fausto E. Zapata, Jr., P.C., a small firm in Manhattan, founded in 2005, that has almost exclusively represented individual plaintiffs in a wide range of labor and employment issues from the inception of the firm.  Moreover, I have 20 years of experience in the field of labor and employment law and, to that end, I have litigated a variety of labor and employment matters in both Federal and New York State courts.

In the past, I have successfully handled numerous wage and hour matters ranging from individual claims to collective actions involving over 400 plaintiffs. *See, Ramos v. The City of New York*, S.D.N.Y. 13 Civ. 9225 (KBF); *Ozpinar, et al. v. L & G Delite, LLC, et al.,* E.D.N.Y. 13 Civ. 7368 (SJ)(CLP) (court approved 40% contingency fee in settlement); *Stephens v. The City of New York, et al.*, S.D.N.Y. 13 Civ. 2364 (KBF); *Olga Quintana v. United Building Maintenance Associates, Inc.*, E.D.N.Y. 11 Civ. 5708 (KBF) (court approved 40% contingency fee in settlement); *Jehle v. The Christophers*, *et al.* S.D.N.Y. Index No. 14 CV 2284 (court approved 40% contingency fee in settlement); *Sanchez v. Metro Terminals Corp.*, et al., E.D.N.Y. 10 Civ. 1645 (court approved 40% contingency fee in settlement); *Carmen Maidana v. La Esquina Criolla Restaurant, Inc.*, *et al*., E.D.N.Y. Case No. 11 Civ. 2606 (CBM) (CLP)).

With regards to attorneys' fees, Plaintiff's counsel and Plaintiff agreed that Plaintiff's counsel would fund the litigation and would receive a contingency of 33.3% of the gross

recovery amount, in this case $6,359.66, after first deducting $921 in costs and expenses from the gross recovery amount.

      When applying the percentage method to an award for attorney's fees, courts in this Circuit follow the trend of applying the lodestar method as a "cross-check" to ensure the reasonableness of the award. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Davis*, U.S. Dist. LEXIS 117082, 2011 WL 4793835, at *10 (*citing Goldberger*, 209 F.3d at 50). The lodestar is assessed by "multiplying the hours reasonably expended on the case by a reasonable hourly rate." Courts then consider factors such as: "(1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *20 (internal citations omitted). Courts commonly award lodestar multipliers between two and six. *See id.* (discussing cases where lodestar multipliers between 2.09 and six were awarded).

      Here, the multiplier would be in the range of less than 1. One court found that "[i]n recent years multipliers of between 3 and 4.5 have become common" and described 2.09 as "at the lower end of the range of multipliers awarded by courts within the Second Circuit." *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 "well within the range awarded by courts in this Circuit and courts throughout the country"); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("In this Court's opinion, a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately").

      At this time, Defendants take no position with respect to Plaintiff's counsel's request for attorneys' fees.

      On this basis, the parties agree that this settlement is an equitable resolution to the instant matter.

                                              Very truly yours,

                                              Fausto E. Zapata, Jr.

C:    J. Patel
      D. Mietus
      File